**STATE of Missouri, Respondent,**

**v.**

**James HINTON, Appellant.**

**No. 58703.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 1992.

Melinda Kay Pendergraph, Columbia, John Klosterman, St. Louis, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Robin H. Grissom, Asst. Attys. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Following a *Batson* hearing ordered by this court, appellant, James Hinton, appeals an order of the Circuit Court of the City of St. Louis denying his *Batson* motion to quash the jury after the State used five of six peremptory challenges to remove African–American venirepersons from the panel. We affirm.

On October 1, 1989, at approximately 11:30 p.m., fourteen year old Juanita Lane was awakened by a loud crashing sound in her father's home at 4448 Manchester. She saw a man, later identified as appellant, standing in her room. The man was carrying a stereo speaker and a book. After asking appellant what he was doing and receiving only a mumbled reply, Ms. Lane ran out of her house to a phone across the street and called the police. While on the phone, Ms. Lane watched appellant leave her home and walk up the street. When the St. Louis Police responded to the scene, Ms. Lane gave a description of appellant and pointed the officers in the direction the perpetrator had gone. Appellant was apprehended only a block away from the Lane home, wearing a jacket owned by Ms. Lane's father.

During the trial, at the close of voir dire, appellant, an African–American, made a timely *Batson* motion based upon the fact the State used five of its six peremptory strikes on African–American venirepersons. The trial court denied the motion. Appellant presented no defense at the trial, and on June 13, 1990, was found guilty by a jury of burglary in the first degree. On July 13, 1990, appellant was sentenced to nine years' imprisonment. On July 20, 1990, an appeal was filed with this court. On appeal, appellant argued that, based on the Supreme Court's holding in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a *prima facie* case of discrimination had been established.

In *Batson,* the court held a *prima facie* case of discrimination is established by showing 1) the defendant is a member of a cognizable racial group and the prosecutor exercised peremptory strikes to remove members of the defendant's race from the venire panel; 2) it is a fact, upon which the defendant may rely, that peremptory challenges constitute a practice which permits those to discriminate who are of a mind to discriminate; and 3) these facts and other relevant circumstances raise an inference that the prosecutor used his peremptory challenges to exclude venirepersons from the jury on account of race. *Batson v. Kentucky,* 106 S.Ct. at 1723. Once a *prima facie* case has been established under *Batson,* a rebuttable presumption of discrimination in the exercise of peremptory challenges arises, and the burden shifts to the prosecution to come forward with neutral explanations which are clear, specific, and legitimate. *Batson,* 106 S.Ct. at 1723–24.

After review of the record, this court remanded the case to the trial court for an evidentiary hearing to determine whether the prosecutor had used his strikes in a discriminatory manner. 824 S.W.2d 437. The evidentiary hearing was held on October 4, 1991. At that time, the prosecutor presented his reasons for the use of the peremptory strikes to remove Venirepersons Floyd Dillworth, Lois Douglas, Doris Ligon, Valerie Yvette Cox, Geraldine Jackson and Geraldine Pope. The trial court,

after considering the prosecutor's reasons, found no support for changing the court's prior ruling. This appeal followed.

Appellant has the duty to provide a record containing information sufficient for this court to determine the issues on appeal. *Rowe v. Norfolk & Western Railway Company,* 787 S.W.2d 751, 753–4 (Mo. App., E.D.1990). In the case before us, appellant failed to prepare and maintain a record as to the race of individual members of the jury panel. Therefore, our review is limited to the record before us. *Id.*

"A reviewing court may not reverse a trial court's decision as to whether the prosecutor discriminated in the exercise of his peremptory challenges unless it finds that decision clearly erroneous." *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988). In this case, the prosecutor provided sufficiently neutral explanations as to why the questioned venirepersons were removed from the jury. Therefore, we find no evidence that the prosecutor discriminated or that the trial court erred.

The transcript of the evidentiary hearing recorded the following concerns of the prosecutor regarding those peremptorily struck:

Quinley: ... Mr. Floyd Dillworth ... indicated in response to questions about whether or not he would value the case of a burglary of a rich person's home in a different manner than that of a poor person's ... [that] he thought the value of a burglary case would be reflected by the property or economic position of the victim of the burglary and he also [indicated he] had a son who is doing time for robbery ...

Miss Lois Douglas ... indicated she felt fifteen years is a long time for burglary ...

Miss Doris Ligon ... has a son who did six years for assaulting a police officer ...

Miss Valerie Yvette Cox, a person of only 27 years of age ... indicated fifteen years ... was too much ... for burglary ...

Geraldine Jackson ... indicated that five years is a long time for burglary ... Miss Geraldine Pope ... indicated ... that her brother had served two times for aggrevated [sic] assault and unlawful possession of a knife, a machete knife, and also indicated she would prefer a drug-abuse program at least in her brother's situation to incarceration.

In addition, the transcript of the evidentiary hearing established that appellant's counsel made no record of the "racial breakdowns of similarly-cited jurors." The transcript also indicated that at the hearing, counsel for appellant asserted she had no objections to the reasons presented by the prosecutor for striking Mr. Dillworth, Miss Ligon, and Ms. Pope. However, on appeal, appellant argues these venirepersons were improperly stricken from the jury. We need not address appellant's arguments on appeal regarding these three individuals. See *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App., E.D.1991).

Counsel did voice objections to the removal of Miss Douglas, Miss Jackson, and Miss Cox due to the fact that there was a similarly situated juror, Ms. Lois Davis, who had also indicated fifteen years might be too lengthy of a punishment for burglary. Ms. Davis was allowed to remain on the panel and serve as a juror in the trial proceedings. However, there is no record establishing the race of Venireperson Davis. We cannot simply speculate that Ms. Davis was white and, therefore, that the prosecution discriminated. Once the State comes forth with a neutral explanation to rebut defendant's *prima facie* case of discrimination, "[d]efendant now has the obligation to demonstrate that the State's explanations are merely pretextual and, thus, not the true reason for the use of the State's peremptory challenges." *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). Appellant has failed to meet this obligation regarding Venirepersons Douglas, Jackson, and Cox.

Additionally, even if appellant had been able to establish Ms. Davis was white, the State provided additional explanations at the evidentiary hearing as to why Ms.

Davis was selected and the others were not. Ms. Davis was a 54 year old married housewife. She had prior jury experience and had, in fact, deliberated in a criminal jury trial. She was also a victim of a crime. The prosecutor explained that these were all traits he wanted for a juror in this case. Ms. Cox, one of the stricken panel members to which appellant objected, was only 27 years old, divorced, and had no experience in criminal trial deliberation. Ms. Douglas, though 60 years old and married, had never served on a jury and was inexperienced with criminal trials. Finally, Ms. Jackson was also without jury or criminal trial experience. Therefore, even if appellant had maintained a sufficient record of the race of venirepersons in this proceeding, the State met its burden of bringing forth neutral reasons for its peremptory strikes.

We affirm.

REINHARD, P.J., and CRANE, J., concur.